IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NADEEM ANSARI,<br><br>Defendant. | No. 1:20-CR- 98 |

## STATEMENT OF FACTS

The parties stipulate that the allegations in the Criminal Information and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven them beyond a reasonable doubt with admissible and credible evidence:

### Background Information

1. The Pension Benefit Guaranty Corporation ("PBGC") is a federal corporation within the United States Department of Labor, which is in turn a department of the United States government. PBGC protects the retirement incomes of over 35 million U.S. workers in private-sector defined benefit pension plans.

2. J.D. was employed with PBGC. From approximately March 2014 to October 2018, J.D. held the position of Supervisory Contract Administrator at PBGC. As a Supervisory Contract Administrator, J.D. held unlimited signatory authority on behalf of the United States for significant PBGC contracts. These contracts, characterized by large funding levels and commitment periods extending over a long period, could substantially and critically affect the economic well-being of PBGC. As such, J.D. was a "public official" within the meaning of 18

U.S.C. § 201(a)(1), and was furthermore in a high-level decision-making or sensitive position within the meaning of U.S.S.G. § 2C1.1(b)(3).

3. By virtue of his position as a Supervisory Contract Administrator, J.D. had access to controlled unclassified information concerning PBGC solicitations and contracts. It was a part of J.D.'s lawful and official duty not to discuss or disclose this controlled unclassified information, including proposal evaluations or source selection matters, with or to any unauthorized individuals, including contractors bidding on PBGC contracts. It was also a part of J.D.'s lawful and official duty to disclose to his agency any conflicts of interest with respect to PBGC contracts.

4. From in or about October 2018 until in or about February 2020, J.D. held the position of Director of the Procurement Department at PBGC.

5. Company A was a company created in or about March 2014. ANSARI, J.G., and J.L. were all partners in Company A. ANSARI was Company A's president and Chief Executive Officer. J.G. was Company A's Chief Operating Officer. Both ANSARI and J.G. were prior personal acquaintances of J.D.

### Conspiracy to Bribe a Public Official

6. From at least in or about 2015 through at least in or about August 2017, in the Eastern District of Virginia and elsewhere, ANSARI and his co-conspirators, including but not limited to J.D., J.G., and J.L., knowingly conspired to bribe a public official; that is, J.D. sought and received things of value personally from ANSARI and Company A in return for being influenced to commit and aid in committing, and to collude in and allow, fraud and the opportunity to commit fraud on the United States, and to do acts in violation of J.D.'s lawful and official duties, in connection with the award of PBGC contracts, in violation of 18 U.S.C. § 371.

## Overt Acts

7. ANSARI and his co-conspirators, including but not limited to J.D. and J.G., committed multiple acts to effect the objects of the conspiracy in the Eastern District of Virginia.

## Solicitation Number PBGC01-RP-15-0023

8. Sometime in 2015, J.D. met with ANSARI at a restaurant in the Eastern District of Virginia. During this meeting, J.D. proposed a quid pro quo in which J.D. would help ANSARI win a PBGC contract. In exchange, J.D. sought—and ANSARI agreed to provide—a future job for J.D. with ANSARI's company, Company A. J.D. and ANSARI agreed that J.D.'s compensation from this future job would be $1 million.

9. In or about April 2015, PBGC issued a small business set-aside contract (solicitation number PBGC01-RP-15-0023) to purchase services to improve PBGC's acquisition planning and requirements generation ("the 2015 Contract"). The 2015 Contract was valued at $55 million.

10. ANSARI and his partners, including J.G. and J.L., created a new company called Company B, a subsidiary of Company A, for the purpose of bidding on the 2015 Contract.

11. Between the time J.D. and ANSARI agreed upon the quid pro quo described in Paragraph 8, and in or about August 2015, J.D. met and communicated with ANSARI in the Eastern District of Virginia and elsewhere for the purpose of enabling ANSARI's company, Company B, to win the 2015 Contract. Among other things, J.D.:

    a. provided ANSARI with sample documents for Company B's bid proposal;

    b. wrote down, or had ANSARI write down, specific information that should be included in the proposal;

c. provided labor pricing estimates so that Company B would not bid too high; and

d. reviewed, edited, and commented on Company B's bid proposal before it was submitted to PBGC.

12. J.G. and J.L. were aware that ANSARI was meeting and communicating with J.D. in order to obtain J.D.'s help in securing the 2015 Contract.

13. Ultimately, PBGC awarded the 2015 Contract to another bidder. J.D. urged ANSARI to bid-protest the award at the agency level and helped draft the protest, which was ultimately unsuccessful.

### Solicitation Number PBGC01-RQ-16-0077

14. In or about May 2016, PBGC issued a firm-fixed price, small business set-aside contract (solicitation number PBGC01-RQ-16-0077) to purchase revision and editing services for various acquisition templates used by PBGC's procurement department (the "2016 Contract"). The 2016 Contract was an amalgamation of several prior, smaller contract solicitations issued by PBGC.

15. Sometime in 2016, J.D. proposed a second quid pro quo arrangement in which J.D. would help ANSARI and his company win the 2016 Contract. In exchange for his help in winning this contract, J.D. ultimately sought—and ANSARI agreed to pay—the sum of $125,000 in cash.

16. Between the time J.D. and ANSARI agreed upon the quid pro quo described in Paragraph 15, and in or about September 2016, J.D. met and communicated with ANSARI in the Eastern District of Virginia and elsewhere for the purpose of enabling Company A to win the 2016 Contract. Among other things, J.D.:

a. provided copies of sample templates that the winning contractor would need to create for PBGC;

b. provided guidance for pricing Company A's bid;

c. adjusted the program manager position so that it would align with J.G.'s qualifications;

d. reviewed Company A's templates before they were submitted to PBGC; and

e. provided previous bid proposals for the prior, smaller contract solicitations that together made up the 2016 Contract.

17. J.D. was able to access and provide ANSARI with this sensitive, non-public information by virtue of his official position at PBGC, and he did so in violation of his lawful and official duty not to discuss or disclose this information with or to any unauthorized individuals, including contractors like ANSARI who were bidding on PBGC contracts.

18. PBGC awarded this contract to Company A for approximately $275,000 in or about June 2016 (contract number PBGC01-CT-16-0034). From in or about July 2016 to in or about April 2018, PBGC paid Company A a total of approximately $3.29 million under this contract due to post-award contract modifications. Company A's net profits from the 2016 Contract were approximately $2.23 million. ANSARI owned a 51% interest in Company A, and J.G. owned a 49% interest in Company A.

19. Between approximately July 2016 and August 2017, ANSARI and Company A made a series of cash payments to J.D. totaling at least $48,000. ANSARI provided these cash payments to J.D. in person at a location in Herndon, Virginia, within the Eastern District of

5

Virginia, and J.D. kept track of the cash payments by means of a home-made pegboard using a block of wood and nails representing varying multiples of $1,000.

20. ANSARI communicated with J.G. about making these cash payments to J.D. On at least one occasion in or about January 2017, when ANSARI did not have sufficient cash to make a payment to J.D., he borrowed approximately $2,000 from J.G. and told J.G. to reimburse himself from Company A. J.G. knew that the purpose of the $2,000 cash loan was to pay J.D. in exchange for J.D.'s aid in securing the 2016 Contract.

21. In addition, ANSARI purchased and provided J.D. with various gifts, including silver coins, ammunition, a rifle scope, and other miscellaneous items. These gifts were intended as payments to influence J.D. to defraud the Government and to violate his lawful and official duties.

22. In addition to the cash payment and accounting system described in Paragraph 19, ANSARI and J.D. took other steps to conceal the scheme and their communications with each other from law enforcement authorities. For example, J.D. and ANSARI:

  a. used separate, dedicated cellphones with prepaid SIM cards, provided by Company A, in order to arrange their meetings;

  b. communicated using end-to-end encrypted software applications such as Viber; and

  c. created a dedicated shared email account in order to exchange and review documents as attachments to draft emails.

23. The acts described above were done knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason.

Conclusion

24. This Statement of Facts includes those facts necessary to support the plea agreement between the Defendant and the United States. It does not contain each and every fact known to the Defendant and to the United States concerning the Defendant's involvement in the charges set forth in the plea agreement.

25. The actions of the Defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

G. Zachary Terwilliger
United States Attorney

By: *Grace Hill*
Grace L. Hill
Assistant United States Attorney
Edward P. Sullivan
Special Assistant United States Attorney (LT)
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700
grace.hill@usdoj.gov

### Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

4/15/2020
Date

Nadeem Ansari
Defendant

### Defense Counsel's Signature

I am Nadeem Ansari's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

4/19/20
Date

Joseph King
Counsel for Nadeem Ansari